# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### APRIL SESSION, 1998

FILED

June 9, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **WADE JAMES ODUM,** | ) | **C.C.A. NO. 01C01-9707-CC-00282** |
| | ) | |
| Appellant, | ) | |
| | ) | **LINCOLN COUNTY** |
| **V.** | ) | |
| | ) | |
| | ) | **HON. CHARLES LEE, JUDGE** |
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee. | ) | **(POST-CONVICTION)** |

FOR THE APPELLANT:                    FOR THE APPELLEE:

**N. ANDY MYRICK, JR.**
116 West Market Street
Fayetteville, TN  37334

**JOHN KNOX WALKUP**
Attorney General & Reporter

**TIMOTHY F. BEHAN**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN  37243

**WILLIAM MICHAEL McCOWN**
District Attorney General

**WEAKLEY E. BARNARD**
Assistant District Attorney General
P.O. Box 904
Fayetteville, TN  37334

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Petitioner, Wade James Odum, appeals from the order denying his petition for post-conviction relief. Petitioner was convicted of theft and was sentenced as a career offender to serve fifteen (15) years in the Tennessee Department of Correction. After the conviction was affirmed on direct appeal, Petitioner timely filed his petition for post-conviction relief. Following an evidentiary hearing, the trial court dismissed the petition. Petitioner argues the trial court erred in denying him relief based upon the Sixth Amendment right to the effective assistance of counsel. We affirm the judgment of the trial court.

"In post-conviction relief proceedings the petitioner has the burden of proving the allegations in his petition by a preponderance of the evidence. McBee v. State, 655 S.W.2d 191, 195 (Tenn. Crim. App. 1983). Furthermore, the factual findings of the trial court in hearings "are conclusive on appeal unless the evidence preponderates against the judgment." State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983).

In determining whether counsel provided effective assistance at trial, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner resulting in a failure to produce a reliable result. Strickland v. Washington, 466 U.S. 668, 687, reh'g denied,

467 U.S. 1267 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy the second prong the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

As Petitioner is incarcerated in the Liberty Correctional Institution in Bristol, Florida, he was deposed by telephone on the subject of his petition for post-conviction relief. During the deposition, Petitioner stated that all the grounds of his petition arose out of the ineffectiveness of trial counsel. First, Petitioner claimed that his trial counsel failed to attempt to suppress statements given to three (3) different police officers. Petitioner had confessed to several burglaries committed in Florida, but did not confess to any crime occurring in Tennessee.

Next, Petitioner stated that trial counsel failed to present alibi witnesses. In the original indictment, Petitioner was charged with theft which occurred on January 1, 1993. In addition to the fact that Petitioner was incarcerated on that date, the car dealership from which the car was stolen was closed that day. At trial, the indictment was amended to reflect the date of the offense as February 1, 1993. Petitioner also had an alibi for February 1, 1993, claiming he spent the night of January 31, 1993, in a motel on Highway 231, north of Dothan, Alabama. Petitioner arose around 8:00 or 8:30 a.m. on February 1, 1993, returned an alarm clock to the front desk and checked out of the motel. Petitioner could not recall the name of the motel, nor could he recall the person's name who worked at the front desk of the motel.

Petitioner claimed that he provided this information to trial counsel who failed to investigate his alibi.

Petitioner also alleged that trial counsel failed to properly investigate a photographic lineup in which he was identified as the perpetrator of the theft. Petitioner did not know if the lineup was overly suggestive. Then, Petitioner stated that trial counsel refused to allow him to testify in his own defense because he did not want the jury to hear the Petitioner's past criminal record. Petitioner recalled that he repeatedly requested to testify, both prior to and during the trial.

Petitioner further claimed that trial counsel admitted Petitioner's guilt to the jury during the trial. During his trial counsel's cross-examination of Officer Hopson, trial counsel asked Hopson, "Isn't it true what the defendant told you was he came up there and took the car and never brought it back." Petitioner stated that trial counsel never corrected this statement, but left it as it was admitting his guilt.

Another area of ineffectiveness Petitioner claimed was trial counsel's failure to provide him with civilian clothing during the trial. Petitioner had requested that trial counsel obtain civilian clothing prior to trial, and trial counsel informed him that Chief Campbell at the prison would supply civilian clothes to wear during the trial.

Petitioner alleged that trial counsel failed to pursue a plea bargain on these offenses. While Petitioner recalled that a plea agreement was offered to him with the term of ten (10) years of incarceration, he was advised by Tom Bean, an investigator for the Public Defender's office, that, "maybe we can do better." Therefore, the plea agreement was not accepted, but Petitioner asked trial counsel

to continue to pursue a plea agreement. Petitioner recalled that he was assured a plea agreement would be reached prior to trial.

Finally, Petitioner felt that mitigating factors were present in his case that were not introduced during sentencing. He stated that no bodily injury was done to anyone and that he attempted to assist the authorities involving certain offenses in the State of Tennessee.

Trial counsel for the Petitioner testified at the hearing on the petition for post-conviction relief. Trial counsel stated that as part of his duties as an assistant public defender, he represented Petitioner through trial and shortly after trial. He did not represent Petitioner at his sentencing hearing or motion for a new trial. Counsel recalled that prior to trial, he investigated this case and filed various discovery motions. Counsel met with Petitioner on twelve (12) to fifteen (15) separate occasions. The total amount of time counsel spent with Petitioner prior to trial was between twenty-eight (28) to thirty (30) hours.

With regard to the motion to suppress, counsel stated that he did not file this motion because there was a waiver of rights signed by the Petitioner. As Petitioner has many prior criminal offenses on his record, he admitted that he knew his rights, that he did not have to make any statements, and that those statements he made could be used against him. When counsel discussed this matter with Petitioner, Petitioner admitted that he was only making these admissions to try to get a good deal and minimize his total exposure to incarceration. Counsel believed there was no way to mount a successful suppression of those statements in good faith.

Trial counsel discussed a possible alibi defense with the Petitioner for February 1, 1993. Counsel noticed the defective date in the indictment which stated that Petitioner committed the theft on January 1, 1993. Petitioner did have an alibi for the incorrect date as he was incarcerated on that date and the car dealership was closed on New Year's Day. As the error was not in any way caused by the defense, trial counsel did not believe he had a duty to correct potentially reversible error. Trial counsel did not attempt the cure the defective indictment as in his opinion that would amount to ineffective assistance of counsel. Upon reading of the indictment at trial, the State moved to amend the indictment to reflect the accurate date of the theft as February 1, 1993. Counsel noted this as possible assignment of error for appellate reasons, but he did not want to object at that time by arguing that the defense was caught by surprise by a substantial change of the indictment. Because counsel could not in good faith make those arguments and there was possible reversible error on appeal, counsel did not oppose the amendment of the indictment by the State.

Petitioner told counsel that he spent the night at a motel near Dothan, Alabama on January 31, 1993. Counsel stated that he had been in that area many times and could not recall a motel located on Highway 231 as Petitioner described, but he asked his brother who lived in that area to investigate. Counsel's brother could not find any motel near the location that Petitioner described. Petitioner was unable to provide the name of the motel, the name of the motel clerk who assisted him, or the name that he used to check-in to the motel. Counsel described that even if Petitioner had been at a motel on the evening of January 31, 1993, he could have driven the next morning to the site of the theft and could have been present at the location of the theft by that afternoon when the theft occurred.

When questioned regarding possible plea bargains, counsel stated that the only indication he received from the District Attorney's office was that there would not be any deals. The only deal ever offered was that Petitioner could plead as a career offender or plead to the indictment and receive a sentencing hearing. Prior to trial, there was some discussion about a possible ten (10) year sentence, but the main issue was whether or not that sentence would run concurrent with his sentences in Florida and Georgia. No agreement was reached to run the sentences concurrently, and Petitioner refused the possibility of consecutive sentences despite counsel's advice concerning his sentencing status as a career offender.

Trial counsel explained that the photographic lineup during which the Petitioner was identified as the perpetrator of the theft was in no way suggestive. He and Investigator Bean saw that of the six (6) photographs in the lineup, all were white males who were "heavy set." Also, all of the six (6) pictured were in the same age group as that of the Petitioner. While counsel could not recall if Petitioner was given the opportunity to view the photographs, he did discuss the lineup with the Petitioner.

Trial counsel advised Petitioner prior to trial that if he was to testify, then the State would have the right to impeach him based upon his criminal record. Counsel also told Petitioner that since there was a videotape which showed Petitioner operating the stolen vehicle in Florida, then his testimony would not cast doubt upon that video. While counsel did not advocate Petitioner testifying, he told Petitioner it was his own choice. At the end of the State's proof, trial counsel asked the trial court to address the Petitioner in open court concerning his right to testify. Petitioner

stated that he understood his rights and that it was his free and voluntary choice not to testify.

Counsel recalled that upon cross-examination of Officer Hopson, he asked if Petitioner ever told him he came to Fayetteville to steal a car. When Officer Hopson stated that Petitioner did not outright make that statement, counsel followed up with this question:

> Isn't it true that he told you he came up there; the salesman asked him if he wanted to try the car; they gave him the keys; and he took the keys and took the car and never brought it back?

Hopson responded that this statement was correct. By eliciting this information, counsel hoped to provide the necessary proof in the record to justify a jury instruction on the lesser included offense of joyriding. Tenn. Code Ann. § 39-14-106. Counsel's purpose was to hopefully convince the jury to return a verdict of guilt to a lesser offense than theft.

Regarding the Petitioner's prison uniform, counsel stated that Petitioner wore a Florida correctional uniform, a light blue cotton shirt and pants. There were white tags across the right rear pants pocket and his left shirt pocket which were somewhat faded. Several days prior to trial, counsel discussed with Petitioner the need to wear civilian clothing at trial. Petitioner assured counsel that he would have civilian clothing, which would be provided by his sister. When counsel checked with the jail on the evening prior to trial, he was assured that Petitioner had civilian clothing. On the morning of trial, counsel walked into the courtroom and found Petitioner wearing his prison uniform. When he questioned the Petitioner, Petitioner responded that the civilian clothes did not fit him. As thirty-five (35) to forty (40) potential jurors were already seated in the courtroom, counsel did not want to call

-8-

attention to the fact that Petitioner was wearing a prison uniform. While the trial court later noticed the uniform and offered to remedy the situation by putting tape over the numbers, counsel believed that would only call more attention to Petitioner's clothing. In fact, Petitioner was wearing eyeglasses and had a large eyeglass case which, for all practical purposes, covered the white tag on his front shirt pocket.

Counsel discussed with Petitioner the fact that, as a career offender, no mitigating factors apply as the mandatory sentence for a career offender is the maximum sentence within the applicable Range III. Tenn. Code Ann. § 40-35-108(c). Basically, the sentencing hearing was only to determine whether the defendant had a sufficient number of convictions to constitute his status as a career offender. Petitioner admitted that these prior felony convictions listed on the State's enhancement notice were his during a meeting with trial counsel and did not contest his status as a career offender. In any event, trial counsel did not represent Petitioner at the sentencing hearing.

At the conclusion of the post-conviction hearing, the trial court found that trial counsel conducted a more than adequate investigation into the allegations and discussed all possible defenses with Petitioner. Furthermore, the trial court found that any discussions Petitioner had with counsel regarding his confessions to the police led counsel to determine that there was not a valid basis for a motion to suppress.

While not specifically stated within its findings of fact, it is clear that the trial court accredited the testimony of trial counsel over that of the Petitioner as regarding his wearing a prison uniform at trial. The trial court found that in all instances that Petitioner's recollection differed from the recollection of trial counsel, it accredited the testimony of trial counsel. As the evidence does not preponderate otherwise, we agree and find that the Petitioner's appearance at trial in a prison uniform is due to his own ineffectiveness, and not that of trial counsel. Counsel made several attempts to secure civilian clothing for Petitioner, and Petitioner insisted that he could locate his own clothing.

Any complaints Petitioner has regarding counsel's tactical decisions and strategies employed during the trial are without merit. When reviewing trial counsel's actions, this court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. Strickland, 466 U.S. at 690; see Cooper, 849 S.W.2d at 746. While this tactic did not ultimately succeed in Petitioner's favor, trial counsel's strategy was not so unreasonable under these facts and circumstances.

The trial court noted, and we agree, that the record is clear that counsel advised Petitioner not to testify, but that Petitioner made his own decision after having his rights explained to him by the trial court. Petitioner admitted in his testimony that he was counseled not to testify, but that he made his own decision.

Petitioner's complaints regarding the sentencing hearing are also without merit. As Petitioner freely admits to committing the offenses listed in the

enhancement notice, any argument against his being sentenced as a career offender is moot. The trial court found him to be a career offender under the statutory law, and there is no proof in the record that he was not.

As the trial court noted within its findings of fact, "[H]e [Petitioner], has been unable to demonstrate to the Court how even if those things should have been done, it would have had a different result on the court or on the trial of the case." Petitioner has also failed to meet his burden of proof to this court. Upon review of the record and the briefs in this matter, we affirm the judgment of the trial court.


_____
THOMAS T. WOODALL, Judge


CONCUR:


_____
GARY R. WADE, Presiding Judge


_____
L. T. LAFFERTY, Special Judge